IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM HEMMINGS,<br><br>    Plaintiff,<br><br>    v.<br><br>INSYS THERAPEUTICS, INC., a Delaware corporation.<br><br>    Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, William Hemmings ("Mr. Hemmings"), by and through his undersigned counsel, alleges and state as follows as his Complaint against Defendant, INSYS Therapeutics, Inc.:

**The Parties**

1. Plaintiff, Mr. Hemmings, is a citizen of the State of Illinois, who resides in Elgin, Illinois.

2. Defendant, INSYS Therapeutics, Inc. ("INSYS"), is a Delaware corporation with its principal place of business located in Chandler, Arizona.

**Jurisdiction and Venue**

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs

4. This Court can exercise personal jurisdiction over INSYS, and venue is proper in this District because the acts complained of herein took place in this District, and at all relevant times INSYS regularly and continuously transacted and was doing business within this District.

**Background Facts**

**INSYS and SUBSYS**

5. Opioids are a therapeutic class of drugs used to relieve pain. Fentanyl is among the most potent opioids available for human use.

6. Fentanyl produces effects that are practically indistinguishable from the opioids morphine and heroin, making it extremely addictive and causing severe withdrawal symptoms. However, Fentanyl has a greater potency and a shorter duration of action.

7. In or about March 2012, INSYS began marketing and selling SUBSYS, its Fentanyl-based oral spray, intended for use beneath an individual's tongue (*i.e.,* sub-lingual).

8. SUBSYS is classified by the Federal government as a "Schedule II" controlled substance, based upon, among other things, its high potential for abuse.

9. At all relevant times, INSYS knew that SUBSYS was highly addictive; that SUBSYS was not suitable for long-term use; and that withdrawal from high doses of SUBSYS would lead to extreme withdrawal symptoms.

**Mr. Hemmings and his Treatment**

10. Mr. Hemmings is 50 years old and a paraplegic, a condition caused by a sledding accident in 1985.

11. Despite his condition, he was able to return to gainful employment.

12. Many years after returning to work, in or about 2010, Mr. Hemmings suffered a serious work-related injury, which resulted in him undergoing numerous surgical procedures.

13. As a result of Mr. Hemming's work-related injury and those surgical procedures, and the pain arising out of and associated with them, Mr. Hemmings sought pain management services from Dr. Joseph Belmonte. At that time, Dr. Belmonte was practicing at Alexian Brothers ("Alexian") facility in Elk Grove Village, Illinois.

14. Initially, in 2014, Dr. Belmonte prescribed various narcotics and muscle relaxers to Mr. Hemmings for pain management.

15. However, in or about April 2015, Mr. Hemmings was at Alexian for an office visit with Dr. Belmonte.

16. During that visit, Dr. Belmonte told Mr. Hemmings that he may have something that Mr. Hemmings might be interested in trying for pain management – SUBSYS – a drug that Dr. Belmonte had recently learned about by way of an office visit from a sales representative from Defendant INSYS.

17. After Mr. Hemmings indicated that he was interested in learning more about SUBSYS, Dr. Belmonte brought in an INSYS sales representative, Nick Patel ("Patel").

18. During that meeting, Patel indicated, *inter alia*, that SUBSYS was a spray designed for fast acting pain management; that patients therefore did not have to wait for pain relief; that SUBSYS worked in about five minutes; that Mr. Hemmings could use it multiple times per day; and that Mr. Hemmings was a "perfect candidate" for SUBSYS.

19. During that meeting, Mr. Patel, acting in his capacity as a duly authorized INSYS sales representative, did *not* disclose or mention that SUBSYS was highly addictive; that SUBSYS was not suitable for long-term use; or that there were any risks associated with the use of SUBSYS.

3

20. Mr. Patel further failed to disclose that he was being financially incentivized by INSYS to increase the quantity and strength of physician prescriptions of SUBSYS, whether medically appropriate or indicated for a particular patient or not.

21. Mr. Patel did not make any of those disclosures despite the fact that INSYS and he knew that SUBSYS was highly addictive; that SUBSYS was not suitable for long-term use; and that there were substantial risks associated with the use of SUBSYS.

22. Based directly upon the false and misleading information presented by Patel, Mr. Hemmings agreed to try SUBSYS.

23. Had Mr. Hemmings known that SUBSYS was highly addictive or even potentially addictive; that SUBSYS was not suitable for long-term use; or that there were risks associated with the use of SUBSYS, he would not have agreed to try or use SUBSYS.

24. Subsequently, within one month of the parties' April 2015 meeting, Mr. Hemmings received his first shipment of SUBSYS. That first shipment, and various subsequent shipments, was shipped by INSYS in Arizona to Mr. Hemmings' residence in Illinois.

25. After Mr. Hemmings began using SUBSYS, he was not experiencing consistent or sustained pain relief.

26. From time to time, Mr. Hemmings ran out of SUBSYS or needed refills.

27. Mr. Patel, on behalf of INSYS, told Mr. Hemmings that, in such circumstances, he should text or call *Mr. Patel*, and that he would see to it that Mr. Hemmings would receive additional shipments of SUBSYS.

28. Accordingly, on a regular basis in 2016 and 2017, Mr. Hemmings texted or called Mr. Patel, who on behalf of INSYS, arranged for shipments of SUBSYS to be sent directly to Mr. Hemmings' residence.

29. At no time during any of those communications between Mr. Hemmings and Mr. Patel did Mr. Patel ever mention that SUBSYS was highly addictive or even potentially addictive; that SUBSYS was not suitable for long-term use; that there were risks associated with the use of SUBSYS; or that he was being paid by INSYS to increase quantity and dosages.

30. Beginning in or about June 2015 and unbeknownst to him, Mr. Hemmings became addicted to SUBSYS.

31. As a result, Mr. Hemmings underwent personality changes, including mood swings (including verbal outbursts and aggression), depression, anxiety, suicidal ideation, impulsive behavior, hallucinations, and antisocial behavior problems, among others.

32. Because of that addiction, he also suffered from severe sleeping problems, a desire and need for increased doses and frequency of SUBSYS, and problems concentrating.

33. Despite the fact that he was in regular contact with Mr. Patel and INSYS, including by way of phone calls and texts, Mr. Patel and INSYS never suggested that Mr. Hemmings' use of SUBSYS be reduced, or that he be switched to a different drug, or that he be weaned off SUBSYS.

34. In fact, Patel affirmatively told Mr. Hemmings on one or more occasions that it was a bad idea to reduce or discontinue his use of SUBYS.

35. Moreover, unbeknownst to Mr. Hemmings, in or about the Spring of 2015, INSYS's representatives contacted Express Scripts, and falsely told its representatives that Mr. Hemmings had cancer in order to persuade Express Scripts to approve Mr. Hemmings' receipt and continued use of SUBYS. At that time, Express Scripts was serving as the "PBM" or pharmacy benefits manager for Mr. Hemmings under his health plan. Mr. Hemmings only found

5

out about INSYS's fraud with respect to Express Scripts in 2017, during a telephone conference with a representative of Express Scripts.

36. In or about Spring of 2017, Mr. Hemmings communicated with Patel regarding possibly reducing the strength of SUBSYS that he was then taking.

37. However, Patel encouraged and persuaded Mr. Hemmings that it was a bad idea and that he should not so, even though at that time Patel knew that SUBYS was highly addictive and knew or should have known that Mr. Hemmings was or would be addicted to it.

38. In or about August, 2017, Dr. Belmonte took Mr. Hemmings off of SUBYS after learning, through public reports, of the dangers associated with SUBYS and the fraud and fraudulent practices that INSYS had been carrying out on a national basis with respect to SUBYS.

39. The leadership of INSYS, including its President and CEO, and several Regional Sales Managers were federally indicted on numerous conspiracy charges related to, among other things, INSYS's "Speaker Program" and its use as a pretext for unlawful bribery and kickbacks.

## LEGAL CLAIMS

### COUNT I
### (INSYS THERAPEUTICS, INC. – NEGLIGENCE)

40. Mr. Hemmings incorporates and realleges by reference, as though fully set forth herein, Paragraphs 1 through 39, as Paragraph 40 of Count I.

41. INSYS owed duties to Mr. Hemmings to, *inter alia*:

    a. provide accurate and necessary information to Mr. Hemmings regarding SUBSYS and its side effects, including the extreme danger of addiction;

    b. provide accurate and necessary information to Mr. Hemmings' health care providers and others, including Dr. Belmonte, regarding the same;

6

    c. provide accurate and necessary information to Mr. Hemmings and his medical treaters regarding the proper dosage of SUBSYS, including whether it could be used long term;

    d. to refrain from actively discouraging users, such as Mr. Hemmings, from reducing or getting off of SUBYS;

    e. to disclose to users of SUBYS, including Mr. Hemmings, that SUBYS was financially incentivizing its sales representatives, including Patel, based upon the volume and strength of SUBYS that patients in their territories used;

    f. to disclose to users of SUBYS, including Mr. Hemmings, that INSYS was financially incentivizing prescribing physicians, including based upon the volume and strength of SUBYS that patients under their care used;

    g. to refrain from making false and fraudulent statements to Express Scripts regarding Mr. Hemmings' true condition and reason for taking SUBSYS.

    42. INSYS breached each and every one of those duties in at least the following ways:

    a. using deceptive marketing in an effort to affirmatively mislead Mr. Hemmings and Dr. Belmonte;

    b. providing false, inaccurate, incomplete, and misleading information to Mr. Hemmings and Dr. Belmonte;

    c. failing to provide accurate and necessary information to Mr. Hemmings and Dr. Belmonte, regarding SUBSYS side effects, including the extreme danger of addiction;

    d. marketing and promoting SUBSYS to Mr. Hemmings and Dr. Belmonte knowing of the extreme risks that SUBSYS's use posed to Mr. Hemmings' health and well-being;

    e. promoting and encouraging Mr. Hemmings and Dr. Belmonte to use a much higher and more dangerous "effective dose" solely to maximize profits and commissions;

    f. mandating and encouraging its salespersons, including Patel, to interfere with the doctor/patient relationship and to make material misrepresentations and omissions regarding SUBSYS and the nature and extent of the risks associated its use;

    g.   failing to warn Mr. Hemmings and Dr. Belmonte of the true and known risks associated with the use of SUBSYS, including those associated with long term use of SUBSYS;

    h.   failing to disclose to Mr. Hemmings and Dr. Belmonte that INSYS was financially incentivizing its sales representatives, including Patel, based upon the volume and strength of SUBYS that patients in their territories used;

    i.   failing to disclose to Mr. Hemmings, that INSYS was financially incentivizing prescribing physicians, including based upon the volume and strength of SUBYS that patients under their care used;

    j.   failing to disclose to Dr. Belmonte and Mr. Hemmings that the use and acceptance of INSYS in the marketplace was based upon its monetary incentivization to physicians;

    k.   otherwise acted negligently, recklessly, and wantonly as a matter of law.

43.    As a direct and proximate result of INSYS's breaches of its duties, Mr. Hemmings has suffered, and will continue to suffer damages, in one or more of the following ways: past and future mental anguish; past and future physical pain and suffering; past and future life care expenses; past and future permanent physical impairment; past and future medical and health care expenses; past and future loss of enjoyment of life; and loss of earnings or earning capacity.

**WHEREFORE**, Plaintiff, Mr. Hemmings, by and through his undersigned counsel, respectfully pray for the entry of judgment in his favor and against Defendant, INSYS, on Count I of his Complaint, in an amount in excess of $75,000 exclusive of interest and costs, for all damages to which he is entitled to recover, for emotional distress, for interest, for costs, for punitive damages, and for all other relief that is appropriate under the circumstances.

## COUNT II
### (INSYS THERAPEUTICS, INC. – FRAUD)

44. Mr. Hemmings incorporates and realleges by reference, as though fully set forth herein, Paragraphs 1 through 39, as Paragraph 44 of Count II.

45. INSYS, through Patel, falsely and fraudulently represented to Mr. Hemmings that SUBSYS was safe and effective for the treatment of chronic pain when it knew SUBSYS was highly addictive, not suitable for long-term use; and presented serious risks.

46. INSYS's and Patel's representations were false, and when made them, INSYS an and Patel knew they were false, and yet they willfully, wantonly, and recklessly disregarded the extreme danger of causing serious illness, addiction, and death to chronic pain patients using SUBSYS, such as Mr. Hemmings.

47. The false representations made by INSYS and Patel were carried out with the intent to defraud and deceive Mr. Hemmings for the sole purpose of increasing prescriptions, sales, and consumption of SUBSYS to increase INSYS's profits, all of which evidenced a callous, willful, reckless, and depraved indifference to Mr. Hemmings' health, safety, and welfare.

48. At the time INSYS and Patel made those misrepresentations, they were aware of their falsity, and Mr. Hemmings reasonably relied upon INSYS's false representations.

49. At the time INSYS's representatives made misrepresentations to Express Scripts, they were aware of their falsity, and Express Scripts reasonably relied upon INSYS's false representations.

50. In reliance on INSYS's material misrepresentations and omissions, Mr. Hemmings was induced into using SUBSYS.

51. Had Mr. Hemmings known that the truth regarding SUBSYS, he never would agreed to use, or to have continued to use, SUBSYS.

52. INSYS's wrongful conduct constitutes fraud and deceit and was committed and perpetrated willfully, wantonly, and purposely upon Mr. Hemmings.

53. As a direct and proximate cause of INSYS's fraudulent acts and omissions as set forth above, Mr. Hemmings has suffered, and will continue to suffer damages, in one or more of the following ways: past and future mental anguish; past and future physical pain and suffering; past and future life care expenses; past and future permanent physical impairment; past and future medical and health care expenses; past and future loss of enjoyment of life; and loss of earnings or earning capacity.

**WHEREFORE**, Plaintiff, Mr. Hemmings, by and through his undersigned counsel, respectfully pray for the entry of judgment in his favor and against Defendant, INSYS, on Count II of his Complaint, in an amount in excess of $75,000 exclusive of interest and costs, for all damages to which he is entitled to recover, for emotional distress, for interest, for costs, for punitive damages, and for all other relief that is appropriate under the circumstances.

## COUNT III
### (INSYS THERAPEUTICS, INC. – CONSUMER FRAUD ACT)

54. Mr. Hemmings incorporates and realleges by reference, as though fully set forth herein, Paragraphs 1 through 39, as Paragraph 54 of Count III.

55. At all relevant times, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "Act").

56. At all relevant times Mr. Hemmings was a "person" and a "consumer" as defined by the Act.

57. At all relevant times INSYS was a "person" engaged in "trade" or "commerce" as defined by the Act.

58. Pursuant to Section 2 of the Act:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, …in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

59. INSYS engaged in, among others, the following deceptive acts and/or practices in violation of the Act: falsely and fraudulently representing to Mr. Hemmings that SUBSYS was safe and effective, when it knew that SUBSYS was not, and that it was and would be highly addictive; that it was suitable for long-term use, when it knew that it was not; and that it did not present serious health and other risks, when it knew that it did; and by failing to disclose that it knew that it was highly addictive, and that it was financially incentivizing its representatives, including Patel, to obtain greater strength and greater volumes of prescriptions written.

60. INSYS intended that Mr. Hemmings would rely on its deceptive acts and/or practices to convince him to start and continue using SUBSYS.

61. Mr. Hemmings in fact reasonably relied upon INSYC's deceptive acts and practices.

62. As a direct and proximate cause of INSYS's deceptive and/or fraudulent acts and omissions as set forth above, Mr. Hemmings has suffered, and will continue to suffer damages, in one or more of the following ways: past and future mental anguish; past and future physical pain and suffering; past and future life care expenses;  past and future permanent physical

11

impairment; past and future medical and health care expenses; past and future loss of enjoyment of life; and loss of earnings or earning capacity.

**WHEREFORE**, Plaintiff, Mr. Hemmings, by and through his undersigned counsel, respectfully pray for the entry of judgment in his favor and against Defendant, INSYS, on Count III of his Complaint, in an amount in excess of $75,000 exclusive of interest and costs, for all damages to which he is entitled to recover, for emotional distress, for interest, for costs, for punitive damages, for attorneys' fees, and for all other relief that is appropriate under the circumstances.

**JURY TRIAL DEMANDED**

**RESPECTFULLY SUBMITTED,**

By: **/s/Michael I. Leonard**
**Counsel for Plaintiff**

**LEONARDMEYER, LLP**
Michael I. Leonard
120 North LaSalle, Suite 2000
Chicago, Illinois 60602
(312) 380-6559 (direct)
(312) 264-0671 (fax)
Law Firm I.D. No. 59135