IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM HEMMINGS, | |
| Plaintiff, | |
| vs. | Case No. 18-CV-2036 |
| | Judge Alonso |
| INSYS THERAPEUTICS, INC., a Delaware corporation, | Magistrate Judge Cox |
| Defendant. | |

**PLAINTIFF'S MOTION TO COMPEL THE *RE-DEPOSITION* OF ALEC BURLAKOFF**

Plaintiff, Williams Hemmings, by and through his undersigned counsel, moves this Court for the entry of an Order compelling non-party witness Alec Burlakoff to *re-appear* for his re-deposition in light of his blanket and improper invocation of his Fifth Amendment right against self-incrimination during his deposition, and states as follows:

1. Mr. Burlakoff was formerly a high-ranking managerial employee for Defendant Insys. During the time period that is relevant to the present case, Mr. Burlakoff was in charge of sales for the prescription opioid at issue in this case, Subsys.

2. Mr. Burlakoff, along with various other now former Insys employees, was charged in a federal criminal racketeering conspiracy in the United States District Court for the District of Massachusetts (hereinafter the "Boston Criminal Case"), Case Number 16 CR 10344, *United States v. Babich, Burlakoff, et. al.* *See* Indictment, previously submitted to this Court, at Northern Dist. of IL Docket No. 68, at Exhibit 1.

3. Mr. Burlakoff and his co-Defendants were charged with organizing and carrying out the very same fraudulent schemes that are at issue in the present case.

4. Prior to trial, Mr. Burlakoff elected to enter a voluntary plea of guilty to the charges against him, and to cooperate for the Government in the Boston Criminal Case by testifying against them. The Court in the Boston Criminal Case accepted Mr. Burlakoff's guilty plea and entered a finding of guilty against him

5. Thereafter, Mr. Burlakoff testified as a witness for the Government in the Boston Criminal Case.

6. He provided extensive testimony on all the very same schemes and underlying facts that are at issue in the present case, and even offered testimony at that trial on numerous documents that are likewise now at issue in the present case.

7. Mr. Burlakoff testified in the Boston Criminal Case for more than five days on all of those subjects, on both direct and cross-examination.

8. In light of the fact that Mr. Burlakoff's testimony is directly and keenly relevant to the issues in the present case, including, *inter alia*, with respect to all of the schemes designed and carried out by Insys, including by Mr. Burlakoff, his sales force, and the other members of the management and executive teams of Insys, to increase sales of the prescription opioid Subsys; the policies, practices, and procedures employed and carried out by Insys with respect to the sales and marketing of Insys, including with respect to the doctors who wrote the prescriptions; the policies, practices, and procedures employed and carried out by Insys in order to dupe insurers and pharmacy benefit managers into "approving" Subsys prescriptions submitted by doctors of the patients who took Subsys; the documents relevant to all of the foregoing; Mr. Burlakoff's communications with the other members of Insys's management and executive teams, as well as its sales force, with respect to all of the foregoing, Plaintiff's counsel issued a

Subpoena to Mr. Burlakoff to appear for his deposition.

9. Mr. Burlakoff was properly and timely served with that Subpoena at his residence.

10. *No* objections were filed with respect to that Subpoena, or to Mr. Burlakoff appearing for his deposition, including any motions to quash or limit the deposition in any way.

11. Mr. Burlakoff showed up for his deposition per the Subpoena on June 4, 2019 in West Palm Beach, Florida where he now resides. Plaintiff's counsel traveled to the deposition as well, particularly in light of the fact that no prior notice was provided by or for the Plaintiff of any intent by Mr. Burlakoff to assert his Fifth Amendment right against self-incrimination.

12. However, at his deposition, Mr. Burlakoff refused to answer any questions, i.e., part from identifying himself, providing his address, and contact information, and explaining why he was asserting his Fifth Amendment right in response to every question posed.[1]

13. Plaintiff's counsel also established with Mr. Burlakoff on the record at the deposition that Mr. Burlakoff was <u>not</u> being represented by counsel for purposes of his deposition or for purposes of the present litigation. Insys's counsel of record in the present case also appeared and participated in the deposition by phone – apparently after being pre-notified that Mr. Burlakoff would be asserting his Fifth Amendment rights.

14. Nonetheless, Mr. Burlakoff explained on the record that he was asserting his

---

[1] Mr. Burlakoff did agree, without waiving his Fifth Amendment privilege, to identify various e-mail addresses of Insys employees that appeared on the documents/Exhibits introduced during his deposition, including his own.

Fifth Amendment right in response to every question at the deposition because his attorney (unidentified) had told him to do so – and even though he was not being represented by that or any other attorney at the deposition.

15. Mr. Burlakoff's deposition took approximately two to three hours, and Mr. Burlakoff, as promised, blanketly asserted his Fifth Amendment privilege in response to every question (with the exceptions noted above and in footnote 1).

16. Those assertions of privilege by Mr. Burlakoff included all of the exact same subject matters about which he had already provided days and days of testimony during the Boston Criminal Case, including with respect to numerous of the very same documents that were introduced into evidence at the trial of the Boston Criminal Case. In fact, *Mr. Burlakoff agreed on the record at his deposition that was indeed the case*.

17. Plaintiff's counsel also engaged in colloquy on the record with Mr. Burlakoff at the conclusion of the deposition, and explained to Mr. Burlakoff that he would be filing the present Motion. Mr. Burlakoff *agreed on the record at his deposition that he would "of course" re-appear for his deposition if this Court orders him to come back and answer questions*. To that end, Mr. Burlakoff also provided Plaintiff's counsel with his e-mail address and phone number for contact purposes.

18. Here, there was no basis whatsoever for Mr. Burlakoff's blanket assertion of his Fifth Amendment rights, and no basis for his assertion of his Fifth Amendment rights at all – because he had already waived them by way of both his entry of his plea of guilty in the Boston Criminal Case, and more importantly based upon his days of testimony during the Boston Criminal Case on the same questions, subjects, and documents that were posed to him during his deposition.

19. Indeed, "[A] defendant who enters a valid guilty plea waives, among other constitutional rights, his Fifth Amendment privilege with regard as to the relevant criminal charge." *See Murcio v. Perez*, No. 97 C 3399, 1999 WL 58546 (N.D. Ill. Feb. 3, 1999) (*citing Parke v. Raley,* 506 U.S. 20, 29 (1992); *United States v. Berlin,* 437 F.2d 901, 906 (7th Cir.1971)); *see also In re Scarfia*, 104 B.R. 462, 464 (Bankr. M.D. Fla. 1989) (party waived Fifth Amendment privilege given his extensive sworn testimony in another, prior proceeding).

20. In the present case, Mr. Burlakoff did much more than simply enter a plea of guilty to the very same conduct that is directly relevant to the present case, he testified for days in the Boston Criminal Case about those very same subject matters. Accordingly, at a minimum, he has waived the right to invoke his Fifth Amendment rights with respect to all of the same questions, subject matters, and documents, and those upon which he has already offered sworn testimony in the Boston Criminal Case.

21. Moreover, even if Mr. Burlakoff had a basis to assert his Fifth Amendment rights (which he did not because he waived them), "[T]o be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002) (emphasis in original) (*citing United States v. Apfelbaum,* 445 U.S. 115, 128, (1980); *United States v. Warner,* 830 F.2d 651, 656 (7th Cir.1987); *United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir.1982); *United States v. Reis,* 765 F.2d 1094, 1096 (11th Cir.1985)). There was no such "tendency" here, particularly in light of Mr. Burlakoff's entry of a plea of guilty, and more significantly his extensive

testimony thereafter during the Boston Criminal Case regarding the underlying facts to that plea.

22. In any event, it was and is Mr. Burlakoff's burden to demonstrate the alleged applicability of the privilege. *See, e.g., Shakman v. Democratic Organization of Cook County*, 920 F.Supp.2d 881 (N.D. Ill. 2013) (stating that "[he party attempting to invoke the privilege bears the burden of establishing its foundation . . . the party must assert the privilege in response to specific questions, and may not simply refuse to answer any and all questions. Courts have consistently rejected blanket claims of privilege . . . The person claiming the privilege must establish the possibility of self-incrimination with respect to *each question* and assist the court in its job of weighing the validity of the privilege claim by explaining, to the extent possible, why an answer might tend to be incriminating.") (emphasis in original and citations omitted).[2] Mr. Burlakoff failed to do so, and in fact made it perfectly clear that he was just invoking his Fifth Amendment rights because some told him to do so.

23. Finally, because Mr. Burlakoff's blanket assertion of his Fifth Amendment rights was without basis, he should be required to pay the reasonable costs, attorneys' fees, and expenses associated with his first deposition. *See Murcio*, *supra* (granting the movant's request to re-depose a witness who had improperly invoked the Fifth Amendment privilege during deposition, and awarding the movant its "reasonable costs, fees and expenses").

---

[2] Similarly, in cases where the waiver of the privilege is disputed, the party claiming the privilege also has the burden of establishing *its non-waiver*. *See, e.g., In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 675 (D.C. Cir. 1979)).

24. This Motion is being provided to and served upon Mr. Burlakoff at his current email address, which he provided on the record to Plaintiff's counsel during his deposition.

**WHEREFORE**, Plaintiff, Williams Hemmings, by and through his undersigned counsel, respectfully moves this Court for the entry of an Order compelling non-party witness Alec Burlakoff to re-appear for his re-deposition within 14 days, and for an Order requiring him to pay the reasonable costs, fees and expenses associated with his first deposition, and for such other and further relief as is appropriate under the circumstances.

                                         **RESPECTFULLY SUBMITTED,**

                              By:    <u>s/Michael I. Leonard</u>
                                          **Counsel for Plaintiff**

**LEONARDMEYER, LLP**
Michael I. Leonard
120 North LaSalle, 20th Floor
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardmeyerllp.com

## CERTIFICATE OF SERVICE

The undersigned states that, on June 9, 2019, he caused the above to be served upon Defendant's counsel of record by email, and upon Mr. Burlakoff at his current e-mail address which he provided on the record at his deposition in this matter.

**RESPECTFULLY SUBMITTED,**

**By:** **Michael I. Leonard**
**Counsel for Plaintiff**